UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| STATE OF SOUTH DAKOTA DEPARTMENT OF SOCIAL SERVICES, | ) ) ) ) | CIV. 10-4157-KES |
| Appellant, | ) ) | ORDER AFFIRMING BANKRUPTCY COURT |
| vs. | ) ) | DECISION |
| DAVID E. MALDE, | ) ) | |
| Appellee. | ) | |

Appellant, State of South Dakota Department of Social Services,
appeals the final judgment issued by the United States Bankruptcy Court
for the District of South Dakota,[1] finding that a debt owed by appellee,
David E. Malde, to the State was dischargeable. The court affirms the
bankruptcy court's decision.

## BACKGROUND

The pertinent, undisputed facts are as follows:

Malde is a licensed mental healthcare provider who performs services
in South Dakota. In May of 2004, Malde signed a Provider Agreement
(Agreement) with the State to become a Medicaid provider. Medicaid
providers submit electronic bills to the State for services rendered and the
State's computer system generates a check. To ensure that the claims are

---

[1] The Honorable Charles L. Nail, Jr., Chief Judge.

valid, the State conducts random samplings of the submitted claims. If a provider incorrectly bills the State, he is required to reimburse the State for any amount overbilled.

In March of 2009, one of the State's Medicaid investigators reviewed Malde's Medicaid claims during a random sampling and discovered billing errors. On August 18, 2009, a hearing before an administrative law judge (ALJ) was held. On September 8, 2009, the ALJ rendered a decision determining that Malde overbilled the State in the amount of $90,000. The State did not allege fraud and the ALJ also determined that there were no allegations of fraud.[2] The ALJ's decision became final on September 21, 2009, because Malde did not appeal.

Malde filed for bankruptcy on November 23, 2009. Pursuant to 11 U.S.C. § 523, the State filed an adversary proceeding to object to the discharge of the debt Malde owed the State. The bankruptcy court ruled that the debt was dischargeable. The State timely appealed on October 20, 2010, and, pursuant to 28 U.S.C. §§ 158(a), 158(c)(1), brought its appeal in this court.

---

[2] The bankruptcy court also determined that there were no allegations of fraud because the State did not allege fraud before the ALJ. *See* Transcript, Docket 27 at 36.

2

## STANDARD OF REVIEW

" 'When a bankruptcy court's judgment is appealed to the district court, the district court acts as an appellate court and reviews the bankruptcy court's legal determinations de novo and findings of fact for clear error.' " *Knudsen v. I.R.S.*, 581 F.3d 696, 704 (8th Cir. 2009) (quoting *Fix v. First State Bank of Roscoe*, 559 F.3d 803, 808 (8th Cir. 2009)). Determining whether a fiduciary relationship exists is a question of law. *Kent v. United of Omaha Life Ins. Co.*, 484 F.3d 988, 996 (8th Cir. 2007) ("Whether parties are in a fiduciary relationship is a question of law, which we review de novo." (internal citation omitted)); *see also Bienash v. Moller*, 721 N.W.2d 431, 434 (S.D. 2006) (" 'The existence of a fiduciary duty and the scope of that duty are questions of law for the court.' " (quoting *Ward v. Lange*, 553 N.W.2d 246, 250 (S.D. 1996))). Because the only issue on appeal is a question of law, whether a fiduciary relationship existed between Malde and the State, the court reviews the bankruptcy court's decision de novo.

## DISCUSSION

**Issue:**   **Under South Dakota law, did Malde enter into an express trust with the State by signing the Agreement, and, if so, is the debt Malde owes to the State exempt from discharge in bankruptcy pursuant to 11 U.S.C. § 523(a)(4)?**

"The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.' " *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286 (1991)). But a "fresh start" is not a "free pass," *Schwab v. Reilly*, 130 S.

3

Ct. 2652, 2668 (2010), and the Bankruptcy Code provides for exceptions to the discharge of a debtor's debt. *See generally* 11 U.S.C. § 523(a) (detailing the exceptions to the discharge of a debtor's debt).

"Exceptions to discharge are usually 'narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code.' " *In re Ungar*, 429 B.R. 668, 673 (8th Cir. B.A.P. 2010), *aff'd*, 633 F.3d 675, 680 (8th Cir. 2011) (quoting *Caspers v. Van Horne*, 823 F.2d 1285, 1287 (8th Cir. 1987)). The creditor carries the burden to prove that a dischargeability exception applies by a preponderance of the evidence. *Grogan*, 498 U.S. at 291.

At issue here is 11 U.S.C. § 523(a)(4), which exempts discharge when a fiduciary commits fraud or defalcation: "A discharge . . . does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity . . . ." The Eighth Circuit has "interpreted the term 'fiduciary' in 11 U.S.C. § 523(a)(4) to refer only to trustees of 'express trusts.' " *Hunter v. Philpott*, 373 F.3d 873, 875-76 (8th Cir. 2004) (citing *In re Long*, 774 F.2d 875, 878 (8th Cir. 1985); *Davis v. Aenta Acceptance Co.*, 293 U.S. 328, 333 (1934)). Because "fiduciary" is used in a strict and narrow sense, it "does not embrace trustees of constructive trusts imposed by law because of the trustee's malfeasance."

*Id.* at 876 (citing *In re Long*, 774 F.2d at 878; *In re Cochrane*, 124 F.3d 978, 984 (8th Cir. 1997)).

"While the existence of a fiduciary relationship under § 523(a)(4) is determined under federal law, state law is relevant to this inquiry." *In re Regan*, 477 F.3d 1209, 1211 n.1 (10th Cir. 2007) (applying the Colorado Mechanic's Lien Trust Fund Statute to determine whether a fiduciary relationship existed under § 523(a)(4) (citations omitted)); *see also In re Strack*, 524 F.3d 493, 498 (4th Cir. 2008) (applying Virginia law in determining if an express trust existed); *In re Lewis*, 97 F.3d 1182, 1186 (9th Cir. 1996) (applying Arizona law to determine if a fiduciary relationship existed). Accordingly, the court will apply South Dakota's law on express trusts to determine if Malde was a fiduciary.

The State argues that Malde was a fiduciary because he entered into an express trust with the State when he signed the Agreement. "South Dakota law reflects 'the traditional view that fiduciary duties are not inherent in normal arm's-length business relationships . . . .' " *High Plains Genetics Research, Inc. v. J K Mill-Iron Ranch*, 535 N.W.2d 839, 842 (S.D. 1995) (quoting *Taggart v. Ford Motor Credit Co.*, 462 N.W.2d 493, 500 (S.D. 1990)). But a trustee of an express trust is a fiduciary under South Dakota law. *Willers v. Wettestad*, 510 N.W.2d 676, 680 (S.D. 1994).

In South Dakota, a trust can be either express or implied. SDCL 55-1-2. "An implied trust is one which is created by operation of law." SDCL 55-

5

1-6.[3] "An express trust is an obligation arising out of a personal confidence reposed in and voluntarily accepted by one for the benefit of another." SDCL 55-1-3. The State suggests a four-part test for determining whether an express trust was created: "1. an obligation, 2. arising out of a personal confidence reposed in, 3. and voluntarily accepted by one, 4. for the benefit of another." Docket 6 at 7.

The State's test, however, merely reiterates SDCL 55-1-3, and ignores the requirements of SDCL 55-1-4 and 55-1-5. "Rules of statutory construction require that the Court must read statutes together and to the extent possible, give effect to all language." *Banner Health Sys. v. Long*, 663 N.W.2d 242, 247 (S.D. 2003). "The purpose of statutory construction is to interpret the true intention of the law, which is to be construed primarily from the plain meaning of the statute." *In re Estate of Howe*, 689 N.W.2d 22, 31 (S.D. 2004) (citing *Appeal of AT&T Info. Sys.*, 405 N.W.2d 24, 28 (S.D. 1987)). Thus, the court will construe the plain meaning of all the sections of South Dakota's express trust statutes to determine if Malde created an express trust with the State by signing the Agreement.

An express trust is created as to the trustor, here the State, "by any words or acts of the trustor indicating with reasonable certainty: (1) An intention on the part of the trustor to create a trust; and (2) The subject,

---

[3] "An implied trust arises in the cases described in §§ 55-1-7 to 55-1-10 inclusive." SDCL 55-1-6.

6

purpose, and beneficiary thereof." SDCL 55-1-4. As to the trustee, here

Malde, an express trust is created "by any words or acts of his, indicating

with reasonable certainty: (1) His acceptance of the trust or his

acknowledgment, made upon sufficient considerations of its existence; and

(2) The subject, purpose, and beneficiary thereof." SDCL 55-1-5.

The parties dispute whether Malde needed to intend to create an

express trust. The State argues that a trustee need not intend to enter into

an express trust: "[T]he standard is not in reference to the trustee's

subjective intention, but rather that the trust itself was created for the

benefit of someone other than the trustee. This is why banks and lawyers

can act as trustees even when their only interest in the trust is the financial

gain for administration." Docket 6 at 8.

But, in South Dakota, a trustor and a trustee must intend to create

an express trust. *See, e.g.*, SDCL 55-1-4 (stating that an express trust is

created as to the trustor "by . . . [a]n ***intention*** on the part of the trustor to

create a trust . . . ." (emphasis added)); *In re Farmers State Bank of Amherst*,

289 N.W. 75, 80 (S.D. 1939) ("A constructive trust does not, like an express

trust, arise because of a manifestation of an intention to create it, but it is

imposed as a remedy to prevent unjust enrichment."). The Eighth Circuit

and legal commentators similarly agree that intent is an indispensable

element in creating an express trust. *See, e.g.*, *In re Rine & Rine Auctioneers,*

*Inc.*, 74 F.3d 848, 853 (8th Cir. 1996) (rejecting an "express trust theory

because, based upon the bankruptcy court's findings, there is no basis to conclude that the parties manifested an intent to create such a trust." (citing *Rankin v. City Nat'l Bank of Crete*, 153 N.W.2d 869, 871 (Neb. 1967) ("[i]n order to create a trust, it must clearly appear that such was the intention of the parties."))); 76 Am. Jur. 2d Trusts § 17 (2010) (" 'Express' trusts, which are sometimes referred to as 'direct,' 'technical,' or 'voluntary' trusts, are those trusts created by the manifest intention of the settlor to create them. Express trusts depend upon intention . . . . An 'express trust' is created by the direct and willful acts of the parties . . . .").

An example of an express trust created intentionally by a contract is found in *Willers v. Wettestad*, 510 N.W.2d 676 (S.D. 1994). Willers entered into a stock sale agreement with International Harvester, under which Wettestad would gradually purchase the Siouxland International Truck dealership from Harvester. *Id.* at 678. Wettestad was president of Siouxland. *Id.* Under the agreement, Willers paid $20,000 to Wettestad and Wettestad transferred to Willers 50 percent of his Siouxland stock owned by Wettestad. *Id.* Because Willers was unable to own stock in his own name, Wettestad "acknowledged in the agreement that he was 'acting in a fiduciary capacity as trustee for Willers and agree[d] to fully and faithfully discharge such responsibilities at all times.' " *Id.* The South Dakota Supreme Court found that the agreement created an express trust because it "expressly provided

that Wettestad would act at all times as trustee for Willers with respect to Willers' ownership of fifty percent of the stock of Siouxland . . . ." *Id.* at 680.

The Restatement Third of Trusts[4] also requires an explicit understanding in a contract before an express trust is created: "[A] trust may be created by . . . a declaration by an owner of property that he or she holds that property as trustee for one or more persons . . . a promise or beneficiary designation that creates enforceable rights in a person who immediately or later holds those rights as trustee . . . ."  Restatement (Third) of Trusts § 10. Other courts have similarly required a showing of intent if a written document is alleged to have created an express trust. *See, e.g.*, *State Dep't of Revenue v. Puget Sound Power & Light Co.*, 694 P.2d 7, 16 (Wash. 1985) ("An express trust is intentionally created between the parties of the trust agreement." (citation omitted)); *In re Estate of Davis*, 589 N.E.2d 154, 162 (Ill. App. Ct. 1992) ("In order to find there is a valid express trust, these conditions must be present: an intent to create a trust which may be shown by a declaration of trust by the settlor or circumstances which show the settlor intended to create a trust . . . ."); *see also* 76 Am. Jur. 2d Trusts § 17 (2010) ("An express trust is generally created in one of two ways: (1) a

---

[4] The South Dakota Supreme Court has cited and relied on the Restatement (Third) of Trusts. *See, e.g.*, *In re Conservatorship of Didier*, 784 N.W.2d 486, 491 (S.D. 2010); *In re Estate of Stevenson*, 605 N.W.2d 818, 821 (S.D. 2000). Consequently, the Restatement (Third) of Trusts is persuasive authority of how the South Dakota Supreme Court might rule if it were presented with this case.

declaration of trust, by which the owner of property declares that he or she holds it as trustee for some beneficiary; or (2) a transfer in trust . . . . A valid trust is not created merely by the creation of a moral, ethical, or honorary obligation or trust.").

Malde signed the standard Medicaid provider agreement that all medical providers sign with the State. *See* Docket 27 at 12, Testimony of Randy Hansen, a State Medicaid investigator (identifying the Agreement and stating "[t]his is the standard provider agreement that's given to all Medicaid or all medical providers that request participation in the Medicaid program."). The Agreement does not contain **any** language indicating an intention to create an express trust similar to the language in the agreement in *Wettestad*. The Agreement neither states that the State intended to create an express trust nor uses language such as "fiduciary," "express," "trustee," or "trust," which would indicate an intention to form a trust. Additionally, the Agreement does not reference the establishment of a trust account or that the proceeds would be held in trust. The language of the Agreement does not indicate "with reasonable certainty . . . [a]n intention on the part of the trustor [the State]," to create an express trust. SDCL 55-1-4. Moreover, applicable state and federal statutes and regulations on Medicaid do not establish an express trust between the state and the provider by the signing of a provider agreement to render Medicaid services.

Even if the Agreement created an express trust as to the trustor State, it failed to create an express trust as to the trustee Malde. Neither the Agreement nor Malde's subsequent actions indicate with reasonable certainty that he accepted or acknowledged an express trust as required by SDCL 55-1-5(1). The Agreement also failed to sufficiently notify Malde of the existence of an express trust as required by SDCL 55-1-5(2). Thus, the statutory requirements under South Dakota law for forming an express trust have not been met.

The State argues that the Agreement did create an express trust because the Agreement states that money used to pay Malde's bills would come from the State's treasury. *See* Bankruptcy Ex. P-2 ("Provider acknowledges by Provider's signature on this agreement that Provider understands that payment and satisfaction of each claim will be from Federal and state funds . . . ."). But Malde's knowledge of the funds' source is irrelevant to whether the Agreement created an express trust because access to or knowledge of funds held in a trust account does not automatically create an express trust. *See, e.g.*, *Am. Prairie Constr. Co. v. Tri-State Fin., LLC*, 369 F. Supp. 2d 1112, 1115 (D.S.D. 2005) (reasoning that "[t]he fact that a law firm agrees to receive a deposit into its trust account in connection with a purported settlement does not transform the matter into a trust relationship between the law firm and the adverse party.").

11

The State devotes a significant amount of time arguing that the bankruptcy court improperly relied on *In re Khouri*, 397 B.R. 111 (Bankr. D. Minn. 2008).[5] While *Khouri* is not binding authority on this court because it is from a Minnesota bankruptcy court, the decision is persuasive authority and the bankruptcy court was not amiss to borrow the reasoning in *Khouri*. More important that any reliance on *Khouri*, however, is that, as stated above, the Agreement did not create an express trust between Malde and the State.

The State failed to meet its burden in proving that 11 U.S.C. § 523(a)(4) applies because it has not proven that Malde intended to enter into an express trust relationship with the State by signing the Agreement. Essentially the State attempts to argue that Malde constructively created[6] an express trust by signing the Agreement. If the court were to accept this argument, it would render the statutory distinction between constructive and express trusts meaningl ess, contrary to the standards of statutory

---

[5] The bankruptcy court cited to *Khouri* for the proposition that an express trust requires a res or trust property. *See* Transcript, Docket 27 at 38. While a res is required for a trust, the court here need not reach whether a res existed because there was no intent by either party to form an express trust.

[6] In South Dakota, a constructive or implied trust may be formed when a party acts with actual or constructive fraud, *McFarland v. McFarland*, 470 N.W.2d 849, 851 (S.D. 1991), or at the time of a wrongful acquisition. *Johnson v. Graff*, 23 N.W.2d 166, 168 (S.D. 1946). Malde acknowledges that a constructive trust may have been created when he wrongfully acquired Medicaid funds as a result of his overbilling. Docket 7 at 7. But a constructive trust is insufficient for the court to find that Malde is a fiduciary under 11 U.S.C. § 523(a)(4). *Hunter*, 373 F.3d at 876.

interpretation. *See Banner*, 663 N.W.2d at 247 (reviewing the South Dakota Supreme Court's rules of statutory construction). Thus, the bankruptcy court correctly ruled that the debt Malde owes the State is dischargeable. Accordingly, it is

ORDERED that the bankruptcy court's decision denying the State's claim for an exemption from discharge of Malde's bankruptcy debt is affirmed.

Dated May 5, 2011.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE